Good morning, everyone. Judge Tashima is joining us by videos. I want to make sure that he can see and hear us, Judge Tashima. Yes, I can. Thank you. Great. Well, our panel welcomes you to the Portland Courthouse. I'll be calling the cases in the order that they're listed on the calendar. Before calling the first case up for argument, there are a number of matters that have been submitted on the briefs and record. So I'll just state them for the record. The first one is Stambuck v. O'Malley, DeShong v. O'Malley, Santos Cruz-Chable v. Garland, and United States v. O'Neill. So the first case up for argument in person, welcome, is Nolasco-Rodriguez v. Garland. Good morning, Your Honor. David Shomlu for petitioner. May it please the Court. I'm going to reserve two minutes for rebuttal. All right. Thank you. Your time's on the clock. I'll try to help you, but please keep an eye on that as well. I will do my best. Here we are, Judge, once again, trying to understand the meaning of a CIMT. I think we're closer to understanding the meaning of life versus this CIMT. I do want to start with the government's 28-J letter because I think that's probably on everybody's mind. What is the standard here? Chevron has been repealed. The Skidmore deference is basically advisory. And I would say that that doesn't even apply here. What's peculiar about this case is the immigration judge's decision. You have a written decision, and the Court can find that on AR-50. And then two, three days later, there's an — Let me have you back up. I'm sorry for interrupting. Sure. So no more Chevron in this low-propriet world. So what's the standard then? Is it Skidmore? It's not Skidmore. And I'll tell you why it's not Skidmore. When you look at the agency in this case, how much expertise they have to interpret criminal laws and laws of the State of Oregon criminal laws, it's clear they're not. They're not. They have adopted and created out of whole cloth this protected class, pregnant women, when even the Oregon legislature did not enact this law to protect pregnant women. This law that's before this Court on the assault issue was created to protect fetuses. If they had done their research, if the IJ had done their research, if the BIA had done their research, they would have found out why that is. There's an old Persian proverb which goes like this. You can't be a bull hotter than the soup. And that's exactly what this agency has done. They're creating a protective class that wasn't even protected in the State of Oregon. Having said that, when you look at the judge's decision here, the Court finds that the Petitioner is not entitled to apply for cancellation of removal for a non-LPR as a matter of law, that he's convicted of a CIMT. Then in an oral decision, goes on to say that he's not eligible for cancellation of removal because he committed a crime constituting domestic violence. Yet the same judge in his oral decision says that he can't find that this was a crime constituting domestic violence because the mens rea or the mental element was recklessness. You can't have it both ways. And if the Court looks at the list of statutory bars when it comes to good moral character under Section 101F of the INA, the only thing that seems to apply is if the person committed or was convicted of a CIMT. So this notion that there was some waiver here because that specifically was raised doesn't apply here. Because imagine a world where if this Court finds on a de novo review that this crime was not a CIMT, that the analysis ends there and the case doesn't go back, how would that work? There are no bars, criminal bars, to applying for non-cancellation of removal for a crime constituting domestic violence. It doesn't exist. So if the judge is saying that the Petitioner is not eligible for cancellation or removal because he was convicted of a CIMT, yet he's not eligible to apply for the same relief because he committed a crime constituting domestic violence, but in the same written decision it says he can't apply that, he can't go down that road, I think that cancels that argument out. There is no waiver here, Your Honor. If the Court finds here on de novo review this crime was not a CIMT, this case goes back on its merits, and that's really important. There was no trial here. The AR, the Court gets a lot of ARs, 1,000 pages, 2,000 pages, a lot of that is because there was a trial. That did not happen here. So this judge, without hearing testimony, without hearing the reasons from the Petitioner why he committed this, the facts and circumstances, outright said this was a domestic violence crime, you lose. No merits. So if the Court grants this petition, this case goes back on its merits. Well, in the categorical world that we're living in, we don't look at the merits. And so the peak at the charging documents is just about the most that we can do. So what's your argument is that it's not a crime of moratorium because, what, it's the recklessness, a mental state? Absolutely. The mens rea, the mental state, and the line of cases that this Court has made it clear is that the recklessness when it comes to assaults does not constitute a CIMT. It is absolutely clear. And the Petitioner, including thousands of other people, including lawyers who give advice, including me, give advice to clients and work on cases to reduce the mens rea to recklessness. So to come in and now say, oh, no, no, no, recklessness plus the fact that the victim was pregnant now is a CIMT, now that is enhanced, now that is an aggravating factor. Now, when you look at the sentencing guidelines in Oregon, and here's the other thing why Skidmore doesn't apply, they completely, complete disregard for the sentencing scheme and the maximum term for crimes in Oregon. No discussion. That shows the agency has no clue what they're doing when it comes to that. The Petitioner could not have gone to prison for five years. The maximum that he would have served, I've talked about that in my brief, and I brought the little tic-tac-toe chart, and I'm sure the Court has seen this. This is the Oregon sentencing guidelines. For felonies, based on your historical, your background on how many crimes you committed and the crime seriousness, that determines the punishment, not what the statute says. This controls. There was no discussion about that. So somehow the IJ and the BIA has made it that if the victim is pregnant, it's an aggravating factor, so the person can be punished more. That's further from the truth. The most the Petitioner would have received here was a 90-day jail sentence, mandatory three years probation. Now, I'm saying that the Court could have looked at the judgment of conviction that's in the record at AR 196. It clearly says right there, severity classification, number one, is a six. Criminal history is I, which is minimal. That determines the sentence. The circuit court judge that sentenced the Petitioner could not have gone beyond what the sentencing guidelines allows. And there's case law from this Court. This is nothing new. It had to do with the Washington State sentencing guidelines, and I've cited that in my brief. So I'm going to ask the Court to reverse the IJ and the BIA, find that this is not a CIMT because of the mens rea, and the fact that the victim was pregnant doesn't somehow elevate that to a CIMT, because Oregon has clearly stated that they were doing that to protect fetuses. Because a woman was killed, the fetus was cut out, and the legislature changed the statute to reflect that. The IJ and the BIA did not do that. They are not versed in this area. They didn't even make an attempt. At least in a matter of woo, they looked at California law. They actually looked at California state law. None of that was done here. The IJ said, you know, I feel like we're going to just start a protective class. We're going to piggyback on a reckless mens rea, and here we are. It's a CIMT. And what does the BIA do? Basically rubber stamps it and says, yeah, that's correct. That's accurate. We're running out of time, but before you sit down, let me see if Judge Tashima has any questions. Judge Tashima? No, I'm fine. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Aaron Nelson for the respondent, the Attorney General. Your Honors, I understand the intense interest in whether the agency decision here properly found that Petitioner's claim to the Supreme Court  was a CIMT, but I would be remiss if I didn't reiterate the position that we've taken in our brief that the requirement of showing good moral character is a finding that the immigration judge made and that Petitioner failed to argue to the Board that the Board found had been waived, that the opening brief here, that Petitioner has never used the words good moral character in response to our brief, which the first issue that we say ends the petition, which is the fact that Petitioner has now waived and failed to exhaust good moral character. There was no reply brief, and there was no answer to our 28J in which we say, again, that we don't have to enter the world of post-Chevron because this case and petition can be dismissed. On the waiver issue, Counsel, what do we do with the fact that the IJ based their good moral character decision on the fact that there was a CIMT conviction? I appreciate that, that the immigration judge cited 1101F3, I believe, which is basically having been convicted of a CIMT. But Your Honor's question is the first time that the government as the respondent has been posed with that issue. As the respondent, as the appellee, our obligation is to defend the agency decision and answer Petitioner's claims in his or her brief. When the litigation history here indicates that Petitioner, through Counsel, as I mentioned, never uttered the words or used the words good moral character, it's almost asking us, it's almost like a burden shifting that we have to anticipate that Petitioner, well, what he meant when he engaged the CIMT, he meant to also include. But these are standard steps of the way the BIA. I'm sorry? The BIA did address the merits of the question of whether the crime constituted a CIMT, and you also dealt with that in the brief, and that is ultimately the same legal issue for both the CIMT finding and the good moral character finding. So what's the prejudice to the government here? Well, because the cancellation statute has four elements or four requirements, and they're standalone. And, you know, I would just repeat that if the government had been told by Petitioner's Counsel, and at any stage, by the way, the question that you raised, Your Honor, by the way, the immigration judge found 1101F3 as knocking out his eligibility or his ability to show good moral character. Our entire brief deals with CIMT, therefore we've dealt with both. But we just didn't have that. And despite the fact that the Board put Petitioner on notice, despite the fact that we, in our opening brief, put Petitioner on notice that that has not been raised, I think that the petition can be dismissed or denied based on that basis. But I do appreciate that. When you say it can be dismissed on that basis, even assuming that's true, that's not mandatory, is it? On our part? In other words, don't we still have the discretion to consider this issue? Because as Judge Chung says, you know, it's maybe in the circuitous way, but it's been raised and addressed. I'm sorry, Your Honor. Help me understand how it's been raised except for by the court today? No. In other words, the Petitioner didn't raise this issue directly, but it was one of the arguments on the CIMT issue, wasn't it? Well, I mean, the CIMT issue is the core of Petitioner's case. And Your Honor is correct that exhaustion is no longer a jurisdictional issue, but it is something like a claim processing rule that if raised by the government, the other side has to engage. I understand that. But once we get there, there's no rule that makes it mandatory because of lack of exhaustion, mandatory that we can't consider it, is there? Well, you know, in deference to the court, the court can reach, you know, whichever issues that it chooses to reach. I would just reiterate the claim in our brief that for the reasons I just spoke, that to go beyond that issue would be something like an advisory opinion. But I can shift to – We should exercise our discretion to reach the question of law, so maybe you should turn to the merits of the CIMT issue. Certainly. I'd like to address Petitioner's claims that counsel makes today and that he makes in his brief. The first claim basically says that recklessness as the mens rea, general intent, and any level of physical harm should not be CIMT. And he makes that claim in his brief. And to that I would say, as we have acknowledged and conceded in our brief, as a general matter, general intent crimes with sort of offensive touching or something nominally in the assault category, it does not equal a CIMT. But to say that recklessness, an assault based on recklessness, and any level of harm should not be a CIMT is not controversial. That's not the statute of conviction under which he pled. He pled under a subsection, as we're all aware, of recklessly, yes, causing physical harm and injury to his pregnant wife by strangling her in front of their 2-year-old son. And so analogous, his second point that's sort of analogous or subsumed in here is that the agency's interpretation of the statute at issue is a new rule that cannot be applied rectoactively. To this, the government would say that it's not a new — it's not the — That's on the merits for a second. I'm sorry? Can you address Fernandez-Ruiz? Fernandez-Luiz? Yes, Fernandez-Ruiz. Our case law, it was a reckless assault on a spouse where we said that's not a crime of more turpitude. I don't have that in our briefs. And, I mean, all I can say is I can't address that specifically. I'd be happy to do it in supplemental briefing. Well, accept my representation that we have that case that says reckless assault on a domestic partner is not a crime of more turpitude because it doesn't reach the willfulness mens rea. How would you distinguish that from this case? I would say that as I was in answer to Petitioner's claim of retroactivity and the inapplicability of matter of woe, there is a line of cases both at the agency level and this Court that has said that recklessness plus an aggravating factor does elevate otherwise non-CIMT behavior or conduct to the level of a CIMT. And this goes back, as we say in our brief, to 1988 matter of Dinesh. Assault on a police officer brings a recklessness up to the level of a CIMT. Matter of Sinudo deemed that there are categories of persons in society where the general intent is evident in the assault, but because the victim is a child, a domestic partner, or a peace officer, that elevates it to a CIMT. This Court in Galeano-Mendoza said that simple assault may be a CIMT if it involves aggravating factors like bodily harm on someone's society views as deserving special care and attention. And similarly, in Ramirez-Contreras, a 2017 case that found a CIMT will involve intent to injure, actual injury, or on a protected class. In all these cases, there are basically three factors that we're looking at. There's the mens rea, there's the actus reus, and then there's the victim. And in Fernandez-Ruiz, we had recklessness mens rea, especially protected victim, meaning someone in the same household, which all the cases you cite recognize a spouse or domestic partner as a special class of protected victim. And in Fernandez-Ruiz, the actus reus was any physical injury. Is there a basis for distinguishing the Oregon statute issue here from that one? So I would simply say, in answer to your question and the contention that opposing counsel made, that it would be somewhat absurd to not include pregnant women into a special class. Right, but if we have in the Arizona domestic violence statute at issue in Fernandez-Ruiz, we had the victim, by definition, had to be a member of the same household. It was a domestic violence simple assault statute. And we said assault on the domestic partner with recklessness was not a crime of moral turpitude. So how do we distinguish the Oregon law from that one? Again, I would be happy to brief that in supplemental briefing. The quick answer that I would say is that because we have the modified categorical approach here, the peak that we give here is that the petitioner here strangled his pregnant wife in front of their 2-year-old daughter. You're saying under the modified approach we can consider the fact of the details of what occurred in the crime? Indeed. We don't look to the least culpable conduct? Pardon? We don't look to the least culpable conduct? The least culpable conduct is that he recklessly caused injury to his pregnant wife while he knew that she was pregnant. So we can't consider the actual facts, can we? Well, I believe that you can take a peek at the criminal information and to do otherwise. I thought the criminal information or indictment here has the mental state of recklessness. It does. I'm not saying that it doesn't. I'm saying that there are facts underneath. That doesn't help because we're talking about instances where we have to look at the least culpable conduct of recklessness. We don't have a mens rea that goes to willfulness. Indeed. But I would just reiterate that even under de novo review, the agency here, absent Chevron deference, is the best reading of this Oregon statute and that recklessness with an aggravating factor, because the victim here is a pregnant woman, the court should uphold the CIMT here. You're over time, but we thank you for your argument. Thank you. Your Honor, the I.J. did get something right here, and it's the citation to Fernandez-Ruiz, the case that you've been asking about. The I.J. clearly says mens rea and a protected class, a family member or a spouse, does not amount to a CIMT. It doesn't even amount to a crime constituting domestic violence. So looking at your questions and the judge's notation here, it seems like the judge was making law, was creating this brand-new protected class of pregnant women when what's the difference between a pregnant woman or a spouse? They're both, if they fall under the family protection that the court has mentioned in this case, doesn't support this aggravating factor, Your Honor. And I ask the court to grant this petition, remand the case to the BIA with an order to send it back to the I.J. to hold an individual hearing or trial on the merits of the case, Your Honor. Thank you. All right. Thank you both. The matter is submitted, and we'll end here.
judges: TASHIMA, NGUYEN, SUNG